Absolutely your honor. Good morning. May it please the court. Attorney Michael Rohr for the petitioner Yinhui Shi. Mr. Shi's case presents two primary issues. The first is whether extraordinary circumstances are present necessary to excuse the untimely filing of his application for asylum. And second, whether the substantial evidence supports the agency's adverse credibility determination. But turning to the extraordinary circumstances determination. Mr. Shi alleges that this court has jurisdiction to review the case as follows. He testified that as to the name of the individual he can't. Can I ask this? Yes sir. I mean is that this in this case the IJ the immigration judge eventually found that your client wasn't credible in relating any of the what you're about to tell us. Correct. Was found to be not credible. So in that circumstance are the how can how can we say the facts are undisputed? Well I believe the difference between petitioner's case and a case such as Singh or Gasparian is that he was never challenged as to the actual facts of what he stated. The persons that he spoke to he was never questioned on any of this. It comes down to the agency's determination and the IJ's determination that there's a lack of objective evidence. So in my opinion the should be required to provide cooperative evidence to establish an exception to 8 USC 1158A. But does that matter if the IJ thought he was not credible? The IJ's determination turns on vagueness. But there's since there's also an inconsistency pointed to about the medical condition of his nose where I mean I know it doesn't sound independently important but the he testified I believe that his nose was broken but he didn't seek treatment for several days and the medical record says that he had a nosebleed and it was sore for one day. So why isn't that a permissible inconsistency on which the immigration judge could rely? Well actually Judge Graber he testified that his nose was injured. The judge characterized that his nose was broken in her later testimony in her decision. He never testifies that his nose was actually broken. However I turn to cases on cooperative evidence such as Z and should this court find that the other reasons for the adverse credibility finding are not upheld then we would look to whether or not he was entitled notice and opportunity to provide corroborative evidence. You're mixing apples and oranges. I was asking you about your attempt to get the asylum claim reviewed. Judge Graber's question goes to withholding and perhaps Kat. So maybe if we can go back to asylum right because I'm saying the IJ didn't believe your client's story I don't mean that pejoratively but your client's account of having gone to this lawyer right and paid a deposit am I remembering the facts right and so you come up and say well the facts are undisputed I'm saying well how could that ever be true when your clients account of what happened is the only version of fact out there and the IJ found them not to be credible. The the issue is here in my opinion the issue is here whether or not the judge conducted a valid balancing test of those facts which she determines that he was vague in his testimony but in my opinion there's no balancing of the vagueness of those statements those facts he made. But what case says there has to be a balancing of the evidence presented in support of a finding of extraordinary circumstances? There isn't a case that I'm aware of on point on that issue. I would turn to the Real ID Act. Shrestha essentially the immigration judge in this matter imputed the Real ID Act to the finding of extraordinary circumstances. She states in her decision that this case falls under the Real ID Act of 2005 and finds that he was vague and lacked corroborative objective evidence. I have another question regarding the the asylum claim and that is that in its brief here the government relies on the failure to follow the requirements of Lozada as well as on the things that you've been asked about so far. The BIA's decision cites the regulation that is related to to the Lozada requirements but doesn't say anything more about it. Is that sufficient for us to conclude that the BIA also relied on the failure to follow the regulation? Well since the decision in this matter of the cert case the courts come down with other cases such as a Verdiana v. Holder. It's never established whether or not he dealt with an attorney. In fact he states that he never spoke with an attorney at this office. He said it is an office that prepares asylum applications. The difference between cases such as Tamang where, excuse my pronunciation, where the individual allegedly dealt with attorney and not following Lozada was found to be inexcusable. The difference is he didn't remember whether he dealt, Tamang did not remember whether he dealt with an attorney, didn't know the circumstances. He didn't even know if it was an attorney and later said it might have been a friend. So they found that that was inexcusable. In Verdiana this court held that the usage of a non-attorney was sufficient to establish extraordinary circumstances. The record doesn't contain sufficient evidence to determine whether or not Petitioner Shee actually dealt with an attorney in this matter. But didn't he say that he did? I mean you're sort of, he says he had a law firm. He calls it a law firm by the He received a receipt from a person named Wang Zhang. My point I guess is, the question is this, you're asking us to believe his account but not to find that he talked to a lawyer when his own testimony was that he talked to a law firm. And I just, that seems inconsistent to me. Well as this court's aware unfortunately in the immigration field there are many individuals that pose as and there are two different standards here. If this individual was not an attorney, there are no disciplinary, he cannot follow the steps of Lazada. But that's what he represented. He represented that it was a law firm. He didn't say he was victimized by someone purporting to be a lawyer. He did, on cross-examination he mentioned that he never spoke with an attorney. That's in the appellate record at 147. Well can I shift you forward? Certainly. Your time is dwindling. On the merits. Yes. Judge Graber mentioned one of the inconsistencies that the immigration judge relied on. There was another concerning the date. I think that, well it had to do with the age of his son, right? Correct, Your Honor. Maybe you can address both of those because they seem to me on their face to be kind of thin but probably sufficient under the Real ID Act. But maybe you can just address both head-on. Yes, Your Honor. With regard to the timing of Shi's arrest, he testified that he was arrested on March 26, 2004. And it was just, his son was born on March 17th, 2004. He testified that his son was two months old at the time of his arrest. In this matter, they questioned him what, how old his son was. He said two months. He admitted to those statements. There was no follow-up. There's no redirect. There's nothing on that issue. Mr. Shi was never asked to explain further on that. In addition, if I remember, he was later asked at some point, how old was your son when you first came to the United States? And he said three months. And that actually was right. Correct. And that suggests that he's not keeping the date straight, right? So why wouldn't that be, why couldn't one reasonably infer from that that, hey, this guy might be making this up because he can't even keep these dates straight. Again, under cases such as Ren v. Holder, the pressure of testimony, applicants are known to misstate, misconstrue certain facts. In Ren v. Holder, he wasn't even sure of the date of his arrest. And the court did not find that that constituted substantial evidence in that matter. Okay, but he is given a chance with respect to the nose, the inconsistency between what he said happened to his nose and what the medical record reflects. And he's asked, well, why did you tell the doctor that you've got, your nose has only been painful for a day? And he says, I can't explain that. He doesn't remember is what he actually said. He says it was a long time ago. I don't know. And it might be a valid excuse. We also don't know that he, in fact, told the doctor that his nose was injured. It would require a medical evaluation to determine whether blood might still be present in a fractured nose, although that's outside the record. In addition, the board held that there's a discrepancy between the petitioner's letters from his wife and his testimony with regard to the forced sterilization. However, in the October letter, sorry, strike that. In the August letter, she says that she was going to be forced to be sterilized. In the September 25, 2010 letter, she never mentions that she was going to be sterilized. She never mentions that she was sterilized. He testified that she was sterilized in October 2004. There's not a discrepancy between the testimony of Mr. Shi and those letters. Again, I guess the most plausible thing in that situation would be remand would be warranted under those circumstances. But I do not believe that there is an inconsistency or discrepancy in that matter. Thank you. Council used a lot of your time with questions, so we'll give you a minute for rebuttal when the time comes. Certainly. Thank you. Good morning, Your Honors. May it please the court. Bernard Joseph for the United States Attorney General. There are two issues in this appeal. First, whether the plaintiff actually determined that the petitioner was ineligible for asylum, where he failed to file for relief within one year of his arrival in the United States, and where he failed to establish to the satisfaction of the Attorney General that his failure to file was excused by extraordinary circumstances. The second issue is whether or not the plaintiff's evidence compels the conclusion, based on the totality of the circumstances, that the Can I ask you about the first issue regarding asylum? So is the government's position out of the box that we don't have jurisdiction to review the denial of asylum at all? The government's position out of the box is not that the court does not have jurisdiction to review this at all. However, the claim seems to shift from the appeal to the court, where in front of the board he was claiming ineffective assistance of counsel. Now he's claiming fraud by an asylum consultant. But given this court's case law precedent, the government, while it's going to continue its position that there should not be jurisdiction, recommends or recognizes under this court's precedent that there probably is jurisdiction to hear this. Then you would say that the immigration judge's determination that he just didn't present credible evidence that in fact he had been the victim of ineffective assistance of counsel, I guess. Do you think that that finding should be sustained? The finding should be sustained, Your Honor. Okay, and it's just, I don't know, because he didn't come forward with corroborating evidence? Or what was the problem with his account of what happened? Well, he testified that he went to a law firm called the Malin Law Firm. And to support that, because he has to meet it to the court, he submitted a receipt that was at page 347 in the record. I'm sorry, 342 in the record. That really doesn't say anything about the name of the law firm, anything about what the law firm was going to do for him. It's just a receipt for $500. And so the immigration judge found that based on the vague testimony and the evidence he submitted, and the fact that there was, didn't have, he didn't, he had found that the evidence was not credible as to his asylum claim, that he didn't meet the burden to establish extraordinary circumstances. The government would contend that that's definitely supported by substantial evidence, and there's nothing that would compel a contrary conclusion. Is this the case in which if the immigration judge was going to rely on his inability, I greater corroboration, is this a case in which he, the immigration judge, was required to tell him that and say, look, you know, you've given me this version of events which, if believed, might well satisfy the standard, but you got to come forward with something more. I'm going to give you a chance to do that. Well, I don't believe this is a case of credible testimony that the immigration judge said wouldn't meet the burden without corroborating evidence. I think what he said, the government contends that with all the evidence submitted, the testimony, and the documents submitted by the petitioner, that wasn't enough to satisfy the burden, to satisfy the Attorney General, that extraordinary circumstances existed in this case. Would we have to reach that, because as I read the BIA's decision, it held in the alternative to saying that the asylum claim was time-barred, that it also, that he hadn't met his burden of proof on the question, is that a permissible ground for decision as an alternative for the asylum claim? The board found, and the immigration judge as well, the agency found that even if the claim wasn't time-barred, that the petitioner still did not meet his burden because he didn't present a credible claim for asylum. So my question to you is whether we could sidestep the one-year bar issue if, for the sake of the question, we were to agree with the alternative ruling that there wasn't a credible claim presented. Yes, Your Honor. If the court should find that the agency's decision that this was time-barred and did not satisfy the extraordinary circumstances for a failure to timely file, the adverse credibility finding on the asylum claim is enough to affirm the agency's decision. Well, maybe you can address what you've heard your opponent say about the two, at least the two. I just, forced sterilization, inconsistency doesn't strike me as very strong at all. What about the other two? Maybe you can respond to what you've heard. Certainly. The petitioner testified that he was arrested on March 26, 2004, and that day he was punched in his nose, his nose was injured, blood was all over his face. He later testified to a subsequent beating where he had been hit in the front, back, chest, and head, but that had no reference whatsoever to being hit in the nose. Later, he testified that he had gone to the hospital the second day after he was released and it revealed a dislocated nose, and that was his testimony. The medical record he submitted, which is at page 347 of the administrative record, first stated he went there five days after he was released and not two days. His explanation was he thought he could recover at home, and he didn't remember why he had told the record, there's just one mention of being injured in the nose in this record, it wasn't speculation on the part of the immigration judge, which is what they contend in their brief, that there was something else here. Really, in their brief, they posit that maybe there was a hairline fracture of his septum and it didn't become symptomatic until some days after his release, but that's inconsistent with the testimony that the petitioner provides in this case, and it's inconsistent with the medical certificate as well, and so those inconsistencies alone are sufficient to support the adverse credibility finding in this case. What about the date of his being detained in relation to the birth date of his son? Right, well, the petitioner testified that he was arrested on March 26, 2004, and then he later testified that his son was born on March 17, 2004. The agency found that his inability to recall the alleged arrest and the timing of the birth of his son wasn't believable, because in his testimony, or in the facts, I should say, if you can call them that, he was arrested nine days after the birth of his son. His son was born on the 17th, he was arrested on the 26th, but he said it was two months after, which is 60 days. There's a significant inconsistency between nine days and 60 days, especially when we're talking about one, which is one of the major bases of his claim, that the alleged arrest, detention, and harm he suffered, and another significant life event. I don't have children, but I would think the birth of a son would be a significant life event. He speculates that it would be unreasonable for people to remember the birthdays of their children. Even if that's a plausible explanation, it wasn't an explanation that the agency had to accept, and frankly, I don't think it's an explanation that would compel a conclusion that there wasn't this inconsistency here. Was he confronted with that supposed inconsistency and given a chance to try to explain what the deal was? Well, the testimony doesn't show he was confronted with it and given an opportunity. He did testify that he had left the country three months after his son was born, which would have been correct, assuming the facts were true, but there was an opportunity for redirect on this issue, and he wasn't confronted with this. Well, I mean, it's not as though the date of his arrest was some critical fact, right? I mean, whether it was March 17th or April 17th, well, I guess it needs to be before the medical certificate, which is in April. I grant you that, but I mean, at least within the range of a few weeks, it's not critical which particular day it was, right? Well, perhaps it's not critical which particular day it was. If perhaps there was testimony, I couldn't remember what day it was, but it was two weeks after the birth of my son. The petitioner said it was two months. His son was two months old when he was arrested. That's inconsistent with his testimony because his testimony is his son was born on March 7th. Later, or 17th, I'm sorry, Your Honor, 17th. The explanation that it was plausible that he was confused with his son's age is an argument that was made to this Court. And so, I see my time is up. So, the government contends that two major events, and one of them that is central to his case, occurred, and yet his testimony concerning the timing is inconsistent with it, and that's it. Thank you, Your Honors. With respect to the returning to the one-year issue in this matter, I would still like to address the Court and state that there was a holding, a finding that he lacked objective evidence in this matter. Again, the Real I.D. Act has been found where a petitioner has been credible that the corroboration requirement does not apply. If it does apply, arguendo, he would argue that he should have a notice and opportunity to provide that evidence should the other remaining issues of adverse credibility be found not to be upheld. With respect to being his child's birth, again, on that issue, petitioner would allege that, again, it's an inconsistency in a date. There was never any follow-up on that matter. And lastly, even if this application is found to be time-barred, he does not believe those three alleged discrepancies amount to substantial evidence in this matter. He believes that he has provided a valid explanation for each and every one of those. Did he provide the valid explanation at the time of the hearing? Not at the time, but as such as the medical record, there were no follow-up questions. He wasn't provided an opportunity to address that child's birth date. He was never asked a follow-up question on that. There were, there was substantial redirect in this matter. However, these questions weren't asked and we'll never know on this record whether or not he has a valid or reasonable explanation for these. Thank you.
judges: Graber, Rawlinson, Watford